VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA

| | |
|---|---|
| AMBULATORY SURGERY FOUNDATION<br>1012 Cameron Street<br>Alexandria, Virginia 22314,<br><br>-and-<br><br>AMBULATORY SURGERY CENTER<br>ASSOCIATION<br>1012 Cameron Street<br>Alexandria, Virginia 22314,<br><br>-and-<br><br>1012 CAMERON, LLC<br>1012 Cameron Street<br>Alexandria, Virginia 22314,<br><br>   Plaintiffs,<br><br>v.<br><br>ROBERT HALF INTERNATIONAL, INC.<br>2884 Sand Hill Road<br>Suite 200<br>Menlo Park, California 94025-7072,<br> Serve: CT Corporation System<br>   4701 Cox Road, Suite 301<br>   Glen Allen, Virginia 23060-6802,<br><br>-and-<br><br>ACCOUNTEMPS<br>225 Reinekers Lane<br>Suite 600<br>Alexandria, Virginia 22314-2875,<br> Serve: CT Corporation System<br>   4701 Cox Road, Suite 301<br>   Glen Allen, Virginia 23060-6802,<br><br>   Defendants. | Civil Action No. CL10001095<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

FILED
CLERK OF COURTS
CITY OF ALEXANDRIA
2010 JAN 11 A 11: 25
EDWARD SEMONIAN, CLERK
BY_____ DEPUTY CLERK

FILED
CLERK OF COURTS
CITY OF ALEXANDRIA
2010 JAN 11 P 3: 56
EDWARD SEMONIAN, CLERK
BY_____ DEPUTY CLERK

DEFENDANT'S EXHIBIT
A

COMES NOW Plaintiffs Ambulatory Surgery Foundation, Ambulatory Surgery Center Association, and 1012 Cameron, LLC (collectively, "the Companies" or "Plaintiffs"), by and through counsel, and move this Court for judgment against Defendants Robert Half International, Inc. and Accountemps (collectively, "Defendants"), and in support thereof state and allege as follows:

## NATURE OF ACTION

1. This is a breach of contract and negligence action brought by Plaintiffs in connection with claims stemming from Defendants' recommending, placing and supervising a temporary employee, who had a known criminal history of stealing money from charities and businesses, in a position to provide accounting and other services to Plaintiffs beginning in or around December 2007. This employee then stole over three hundred thousand dollars from Plaintiffs in a manner nearly identical to her previous transgressions.

## THE PARTIES

**A. Plaintiffs.**

2. Plaintiff Ambulatory Surgery Foundation ("ASF" or "the Foundation") is an Arizona corporation with its principal place of business located at 1012 Cameron Street, Alexandria, Virginia 22314. ASF is a Section 501(c)(3) tax exempt nonprofit charitable and educational corporation. As such, it is an educational and research organization that, *inter alia*, promotes the highest standards for ambulatory surgery centers ("ASCs"); conducts educational programs; produces publications to educate ASC professionals and the public; broadens available data on ASCs; promotes ASCs to the public and policymakers; and pursues an expanded research agenda.

3. Plaintiff Ambulatory Surgery Center Association ("ASC Association" or "the Association") is a Virginia corporation with its principal place of business located at 1012

Cameron Street, Alexandria, Virginia 22314. ASC Association is a Section 501(c)(6) tax exempt nonprofit trade association. As such, it is a membership and advocacy organization that, *inter alia*, provides member benefits and services; combats legislative, regulatory and other challenges at the federal and state level; assists state ASC associations; enhances ASC representation at the state and federal level; and established a political action committee (PAC).

4. Plaintiff 1012 Cameron, LLC ("1012 Cameron") is a Virginia limited liability company with its principal place of business located at 1012 Cameron Street, Alexandria, Virginia 22314. 1012 Cameron owns the building located at 1012 Cameron Street, Alexandria, Virginia 22314, where the Foundation and the Association are located.

5. The Association and 1012 Cameron are affiliated organizations of the Foundation. In addition, the Foundation is a supporting organization to the Association. Further, the Foundation is the sole member of 1012 Cameron.

6. The Companies operate at the premises located at 1012 Cameron Street, Alexandria, Virginia 22314.

B. **Defendants.**

7. Upon information and belief, Defendant Robert Half International, Inc. ("RHI") is a staffing company with several divisions, including Accountemps, and maintains offices throughout the United States. It is a Delaware corporation with its principal place of business located at 2884 Sand Hill Road, Suite 200, Menlo Park, California 94025-7072. Defendant RHI regularly conducts business in Virginia, and maintains several offices throughout the Commonwealth of Virginia.

8. Upon information and belief, Defendant Accountemps is a division of Robert Half International, Inc., which is a Delaware corporation with its principal place of business located at

2884 Sand Hill Road, Suite 200, Menlo Park, California 94025-7072. Defendant Accountemps regularly conducts business in Virginia, and maintains approximately six offices in the Commonwealth of Virginia, including one located at 225 Reinekers Lane, Suite 600, Alexandria, Virginia 22314-2875.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Defendant pursuant to Va. Code § 8.01-328.1.

10. Venue is proper pursuant to Va. Code § 8.01-262.

## FACTUAL BACKGROUND

11. In or around December 2007, the Foundation and Defendants entered into an arrangement to meet the Foundation's accounting and other financial staffing needs.

12. According to RHI's website, RHI holds itself out to the public and potential clients a "global leader in professional staffing and consulting services, with a network of more than 400 offices worldwide." And, according to RHI's website, "[a]s it has grown, the company has kept its specialized approach – each of its seven professional staffing divisions has a separate focus and separate employee teams[,]" including "Accountemps®, Robert Half® Finance & Accounting and Robert Half® Management Resources, for temporary, full-time and project professionals, respectively, in the fields of accounting and finance[.]"

13. According to the Accountemps' website, Accountemps holds itself out to the public and potential clients as "the world's first and largest specialized temporary staffing company for accounting, finance and bookkeeping professionals[,]" and it is "dedicated to matching highly skilled financial professionals to [an employer's] needs."

14. On or around December 10, 2007, Defendants presented Yvette Cecilia Logan ("Ms. Logan") to the Foundation as a trustworthy and dependable individual suitable and qualified to provide accounting services as a temporary employee.

15. Ms. Logan worked for Defendants and functioned as a temporary employee placed with the Foundation in an accounting position from approximately December 10, 2007 through March 23, 2008. During this time period, the Foundation paid Defendants approximately $36,371.97 for Ms. Logan's services.

16. At the time of her assignment by Defendants to the Foundation, Defendants failed to conduct a basic employment screening and reference check, and never disclosed to the Foundation that Ms. Logan had a history of prior criminal behavior. As such, the Companies had no knowledge of Ms. Logan's prior wrongdoings and/or legal infractions.

17. During the time Defendants assigned Ms. Logan to the Foundation, she worked in the accounting department and had access to financial documents, including blank checks. In particular, Ms. Logan was responsible for issuing checks to pay invoices for the Foundation, the Association, and 1012 Cameron.

18. The process Ms. Logan was to follow was that after Kathy Bryant, the Foundation's president, approved payment of an invoice, Ms. Logan would enter the invoice into Quickbooks, the Companies' accounting software. Once entered, Ms. Logan would prepare a check for Ms. Bryant's signature, and deliver the check to Ms. Bryant.

19. Ms. Logan was never authorized to sign checks or sign Ms. Bryant's name to checks.

20. On or about March 24, 2008, the Foundation converted Ms. Logan to a full-time employee. She was given the title of "accountant." This conversion was based in part on the

recommendation from Defendants that Ms. Logan was a trustworthy and dependable individual who was suitable and qualified to provide accounting services.

21. On March 24, 2008, and in order to convert Ms. Logan from a temporary employee employed by Defendants to a full-time employee of the Foundation, the Foundation paid a conversion fee in the amount of $6,100.00 to Defendants.

22. In her capacity as an accountant, Ms. Logan issued checks for the Foundation and 1012 Cameron. She followed the same process detailed above: after Ms. Bryant approved payment of an invoice, Ms. Logan was to enter the invoice into the accounting software Quickbooks, and then prepare a check for Ms. Bryant to sign. In addition, Ms. Logan may have occasionally been asked to fill in for the Assistant Controller and print checks using Quickbooks for the Foundation and the Association.

23. As had been the case during Ms. Logan's time with the Companies as a temporary employee, her authority was limited to printing checks after Ms. Bryant had approved issuing the check in writing. Ms. Logan continued to have no signature authority.

24. On or around March 6, 2009, financial consultants for the Companies, in preparation for an audit, noticed problems with various bank statements and bank reconciliation reports for the Companies' respective bank accounts, including suspicious checks, balance differences, and other suspicious activity.

25. The subsequent investigation determined that Ms. Logan cashed 159 checks to herself between January 2008 and March 2009, from the Companies' respective bank accounts.

26. On or around March 19, 2009, the Companies reported Ms. Logan's suspected embezzlement to the Alexandria, Virginia Police Department.

27. Several months later, Ms. Logan pled guilty to a single count Criminal Information charging her with Bank Fraud, in violation of Title 18, United States Code, Section 1344. The Plea Agreement was signed by Ms. Logan on September 21, 2009 and filed with the Clerk, U.S. District Court for the Eastern District of Virginia, the same day.

28. Unbeknownst to the Companies, Ms. Logan had a history of committing similar criminal acts – a history that would have been uncovered by a basic employment screening and reference check. In fact, a publicly available Washington Post article detailed Ms. Logan's prior criminal conduct:

> A 30-year-old District woman has been sentenced to 18 months in prison after admitting she stole $112,000 from the Cystic Fibrosis Foundation in Bethesda to help feed her gambling addiction, according to attorneys in the case. Yvette Logan, already serving 27 months for stealing $536,000 from a Bethesda cable television firm, pleaded guilty in federal court here Wednesday to one count of interstate transportation of stolen property: the money she admitted to stealing. Logan's half-sister, Taria Tolson, 22, of the District, also pleaded guilty in the case. Prosecutor Geoffrey R. Garinther said Tolson cooperated with investigators and is scheduled to be sentenced Sept. 24.
>
> Garinther said Logan and Tolson worked for the Cystic Fibrosis Foundation as account clerks from June to December 1990. They wrote foundation checks to themselves, using the fictitious name Amanda Morris, then entered the checks in the ledgers as payable to legitimate suppliers, such as printing companies and office suppliers, Garinther said. Tolson cashed the checks and gave about $80,000 of the total to Logan, according to the prosecutor.
>
> Logan was charged with stealing $536,000 earlier in 1990 while she was working for TCI East in Bethesda, a subsidiary of Tele-Communications Inc., of Denver. The company became suspicious, and Logan was arrested, according to Garinther.
>
> While she was out on bond, she began working for the Cystic Fibrosis Foundation and repeated the scam, Garinther said. She was convicted and given a 27-month prison term for the cable television company theft in 1990, but disappeared before she was to report to prison on Jan. 2, 1991, he said. She was captured six months later in the District and charged with the Cystic Fibrosis case as well, he said.

> Garinther and defense attorney Richard Bardos told U.S. District Judge John R. Hargrove that Logan had a "gambling addiction" and spent much of the stolen money on lottery tickets and at casinos in Atlantic City, N.J.

Paul W. Valentine, *D.C. Woman Sentenced in 2nd Charity Embezzlement*, THE WASHINGTON POST, July 17, 1992, at D6.

29. Defendants had a duty to exercise reasonable care to uncover and disclose to their client the Foundation this type of publicly available information about Ms. Logan's prior misconduct before recommending and placing Ms. Logan with the Foundation as an individual with fiduciary responsibilities in an accounting position – the very position that would allow her to repeat her wrongful conduct. Defendants plainly failed to meet this standard of care.

30. Moreover, by failing to provide adequate and valuable staffing and accounting services to the Companies, Defendants breached their contractual obligations to the Foundation.

31. These failures caused the Companies to sustain substantial financial injury.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract)

32. The allegations set forth in paragraphs 1-31 above are hereby re-alleged and incorporated with the same force and effect as if fully set forth herein.

33. There exists a valid and enforceable agreement between the Foundation and Defendants.

34. The agreement requires Defendants to provide the Foundation with *inter alia* adequate and valuable staffing services for accounting, finance, and bookkeeping needs.

35. Instead, Defendants provided the Foundation with a temporary employee who had a criminal record mirroring the very criminal activity described herein and for which she pled guilty.

36. As such, Defendants wholly failed to provide adequate and valuable staffing services.

37. This failure constitutes a material breach of the agreement.

38. The Companies have suffered damages of not less than $80,000.00, which includes monies embezzled by Ms. Logan while she was an employee of Defendants and assigned to work for the Foundation as well as the amount paid to Defendants for Ms. Logan's inadequate and valueless services, in addition to their fees and costs incurred herewith.

## COUNT II
### (Negligent Hiring)

39. The allegations set forth in paragraphs 1-38 above are hereby re-alleged and incorporated with the same force and effect as if fully set forth herein.

40. Ms. Logan had a criminal history of stealing money from charities and businesses at which she worked. Indeed, this history is publicly available through the Internet free of charge.

41. Defendants had a duty to exercise reasonable care to do an adequate and basic employment screen and reference check.

42. Defendants failed to meet that duty.

43. Defendants' failure to conduct an adequate and basic employment screen and reference check, and thus their failure to uncover and disclose Ms. Logan's criminal history, damaged the Companies.

44. Despite Ms. Logan's criminal history of stealing money from charities and businesses at which she worked, Defendants recommended Ms. Logan to a client for work in the Companies' accounting and finance department.

45. Defendants knew of this propensity or should have known of this propensity had they conducted an adequate and basic employment screen and reference check.

46. Defendants clearly failed to inquire into Ms. Logan's background. Had they conducted an adequate and basic employment screen and reference check of this employee, who was to be placed in an accounting/financial position, Defendants surely would not have placed her in the temporary accounting position they did, nor would the Foundation have agreed to her placement as a temporary employee of Defendants or permitted her to apply for a full-time position.

47. As a result of this known propensity to steal money from charities and businesses at which she worked, Defendants hired an unfit employee and placed her in a situation where she could (and did) create an unreasonable risk of harm to others. In fact, it should have been foreseeable that Ms. Logan posed a threat of injury to others when Defendants placed Ms. Logan in the very position that would allow her to repeat her past wrongful conduct – a position that gave her access to accounting and financial information for the Companies.

48. The Companies have suffered damages of not less than $80,000.00, which includes monies embezzled by Ms. Logan while she was an employee of Defendants assigned to work for the Companies as well as the amount paid to Defendants for Ms. Logan's inadequate and valueless services, in addition to their fees and costs incurred herewith.

## COUNT III
### (Negligence – Defendants' Assignment of Temporary Employee)

49. The allegations set forth in paragraphs 1-48 above are hereby re-alleged and incorporated with the same force and effect as if fully set forth herein.

50. Defendants had a duty to exercise reasonable care to do an adequate and basic employment screen and reference check, and uncover and disclose Ms. Logan's background of

criminal wrongdoing, including stealing money from charities and businesses at which she worked, prior to recommending Ms. Logan as a trustworthy and dependable individual qualified for an accounting position and placing her in the very position that would allow her to repeat her wrongful conduct.

51. Defendants breached that duty, and plainly failed to meet this standard of care, by recommending Ms. Logan as an individual qualified for an accounting position who could be trusted with the Companies' financial documents, including their respective checkbooks.

52. Defendants' failure to do an adequate and basic employment screen and reference check, and disclose Ms. Logan's prior criminal history before recommending her for a temporary accounting position proximately caused harm to the Companies.

53. As a result of Defendants' negligence, the Companies have suffered damages of not less than $80,000.00, which includes monies embezzled by Ms. Logan while she was a temporary employee, as well as the amount paid to Defendants for Ms. Logan's inadequate and valueless services, in addition to their fees and costs incurred herewith.

### COUNT IV
(Negligence – Defendants' Recommendation of Temporary Employee)

54. The allegations set forth in paragraphs 1-53 above are hereby re-alleged and incorporated with the same force and effect as if fully set forth herein.

55. On or around March 24, 2008, the Foundation converted Ms. Logan from a temporary employee who was employed by Defendants to a full-time employee of the Foundation. In deciding to convert Ms. Logan, the Foundation specifically relied on Defendants' recommendation that Ms. Logan was qualified to work in an accounting position. Indeed, in order to hire Ms. Logan as a full-time employee, the Foundation paid Defendants a "conversion fee" in the amount of $6,100.00 on or around March 24, 2008.

56. Defendants had a duty to exercise reasonable care to do an adequate and basic employment screen and reference check, and uncover and disclose Ms. Logan's background of criminal wrongdoing, including stealing money from charities and businesses at which she worked, prior to recommending Ms. Logan as a trustworthy and dependable individual qualified for an accounting position and placing her in the very position that would allow her to repeat her wrongful conduct.

57. Moreover, Defendants had a duty to exercise reasonable care to do an adequate and basic employment screen and reference check and not recommend a person, who has a history of stealing money from charities and businesses at which she worked, for a full-time position with a client and accept a conversion fee for such recommendation.

58. Defendants breached that duty, and plainly failed to meet this standard of care, by recommending Ms. Logan as an individual qualified for an accounting position who could be trusted with the Companies' financial documents, including their respective checkbooks.

59. Defendants' failure to do an adequate and basic employment screen and reference check and disclose Ms. Logan's prior criminal history before recommending her for a full-time position proximately caused harm to the Companies.

60. As a result of Defendants' negligence, the Companies have suffered damages of not less than $330,000.00, which includes the monies embezzled by Ms. Logan after being hired as a full-time employee upon Defendants' recommendation, in addition to their fees and costs incurred herewith.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and award the following relief:

A. A finding that Defendants breached the agreement;

B. A finding that Plaintiffs have been damaged by Defendants' breach;

C. A finding that Defendants were negligent in hiring Ms. Logan and recommending her for placement with Plaintiffs;

D. A finding that Plaintiffs have been damaged by Defendants' negligence;

E. Damages of not less than $415,000.00;

F. Plaintiffs' costs, expenses, and reasonable attorney's fees incurred in bringing this litigation;

G. An award of pre-judgment interest at the maximum rater permitted by law;

H. An award of post-judgment interest at the maximum rate permitted by law; and,

I. Such other and further relief as the Court deems just and proper, or as to which Plaintiffs may show they are entitled at trial.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

Ambulatory Surgery Foundation,
Ambulatory Surgery Center Association
1012 Cameron, LLC

By Counsel:

Dated: January 11, 2010

Lisa A. Estrada, Esq. (VSB No. 44034)
Jackson D. Toof, Esq. (VSB No. 48842)
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
Telephone: (202) 857-6000
Facsimile: (202) 857-6395
Email: estrada.lisa@arentfox.com
toof.jackson@arentfox.com
*Counsel for Plaintiffs*